UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NED CHARTERING AND TRADING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 98-2626 (RCL) |
| | ) | |
| | ) | |
| REPUBLIC OF PAKISTAN, ET AL., | ) | **FILED** |
| | ) | |
| Defendants. | ) | JUN 1 8 2001 |
| | ) | |
| _____ | ) | NANCY MAYER ... .ON. CLERK |
| | | U.S. DISTRICT COURT |

## MEMORANDUM OPINION

Now before the Court are two motions.  First, the plaintiff moves for attorneys' fees and costs related to the summary judgment motion decided on December 4, 2000.  Second, the defendant moves for a protective order to prohibit discovery by the plaintiff in an effort to execute a judgment.  Third, the plaintiff moves for leave to file a sur-reply on the protective order issue.

After a complete review of the parties' motions, the applicable law, and for the following reasons, the Court DENIES the plaintiff's motion for fees and costs, GRANTS in part and DENIES in part the defendants' motion for a protective order, and GRANTS the plaintiff's motion for leave to file a sur-reply.

## I. BACKGROUND

This case is a contract dispute between a purchaser of

shipping and the shipping broker who arranged the purchase.  The
broker, Ned Chartering and Trading, sued the freight purchaser,
the Republic of Pakistan, for failing to pay on contract rights
which had been previously assigned to Ned Chartering.  After
bringing suit, Ned Chartering moved for summary judgment.  The
Court granted that motion on December 4, 2000, and awarded Ned
Chartering a $268,000 judgment on December 14, 2000.

At this time, two discrete issues present themselves.
First, Ned Chartering seeks attorneys' fees and costs for
Pakistan's alleged bad faith behavior during the summary judgment
proceedings.  Second, Pakistan seeks a protective order
prohibiting discovery by Ned Chartering.  Such discovery, if
permitted, would be used by Ned Chartering to uncover attachable
Pakistani assets.

The Court now considers these and all other ripe issues.


## II. ANALYSIS

### A.   The Plaintiff's Motion for Attorneys' Fees and Costs

In the United States, the general rule is that "unless
Congress provides otherwise, parties are to bear their own
attorneys' fees." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533
(1994); *see also Hall v. Cole*, 412 U.S. 1, 4 (1973).  However,
the judiciary has long retained an inherent power to award fees
to a prevailing party when the "losing party has acted in bad
faith, vexatiously, wantonly, or for oppressive reasons . . .."

-2-

*Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 260
(1974); *F. D. Rich Co. v. Industrial Lumber Co.,* 417 U.S.116, 129
(1974).

This power should not be wielded freely, however, but rather
"should [be] exercise[d] only in instances of serious and studied
disregard for the orderly process of justice." *United States v.
Wallace,* 964 F.2d 1214, 1219 (D.C. Cir. 1992) (quoting *Overnite
Transp. Co. v. Chicago Indus. Tire Co.,* 697 F.2d 789, 795 (7th
Cir.1983); *see also Lipsig v. National Student Marketing Corp.,*
663 F.2d 178, 180-82 (D.C. Cir. 1980). ("A court must, of course,
exercise caution in invoking its inherent power, and it must
comply with the mandates of due process, both in determining that
the requisite bad faith exists and in assessing fees.").

Applying this standard to the facts of this case, the Court
finds that an award of attorneys' fees and costs is not
appropriate.  While this litigation has proceeded both sluggishly
and sloppily at times, the Court cannot say, from the evidence
adduced by the plaintiff, that the defendants maliciously
intended to frustrate the administration of justice.

In support of its motion, the plaintiff relies on several
instances that allegedly evince the defendants' bad faith.  For
example, the plaintiff argues that the defendants' payment of
disputed funds to a third party showed bad faith because the
defendants "made no effort to ascertain the validity of the
[third party's] . . . claim to the proceeds."  *See* Brief for

-3-

Plaintiff, Dec. 22, 2000, at 2.  The Court disagrees.  The defendants paid this money to the third party in October 1995, several years before the instant suit was brought.  *See* Complaint (Oct. 29, 1998).  An award of attorneys' fees and costs for bad faith must be limited to bad faith *during the litigation process*. Otherwise, a party could reign in distant and collateral grievances in effort to capitalize on a bad faith act, even if that act had no effect on the litigation process.  An inherent power so exercised would extend far beyond a court's traditional prerogative to manage its own docket, and instead would amount to a roving equitable power--a power at clear odds with settled precedent.  *See Alyeska,* 421 U.S. at 260 (explaining that the judiciary does not have "roving authority . . . to allow counsel fees as costs or otherwise whenever the courts might deem them warranted").

The Court also disagrees with the plaintiff's characterization of the defendants' post-judgment transfer of funds.  The plaintiff argues that the transfer amounts to a bad faith attempt to hide its assets in light of the recent judgment. While the timing of the transfer does raise an eyebrow, the defendants have shown that they had a pre-existing intention to transfer the funds.  An audit report performed prior to the December 4, 2000 judgment criticized the large balances in the Washington D.C. bank and suggested the funds be transferred.  *See* Exhibit 6, Defendants' Emergency Motion to Vacate Writs of

-4-

Attachment, Jan. 12, 2001.  In light of that report, there is no
reason to presume--without further evidence--that the transfer
was undertaken in bad faith.

Putting aside these two instances of alleged bad faith, the
Court is left with nothing more than the usual haggles and
tribulations of civil litigation.  The defendants' failure to
return the proof of service form and delay due to the
substitution of counsel are both typical miscues which occur on a
regular basis in litigation.[1]  As well, the Court fails to find
that the defendants' litigation arguments were so spurious as to
bespeak bad faith. *See* Brief for Plaintiffs, Dec. 22, 2000, at 2,
3 (arguing that the defendants' motion for dismissal had "no
basis," and that the defendants' opposition to summary judgment
was "groundless").  It is true that several of the defendants'
arguments were meritless, but that alone does not suggest bad
faith.  Attorneys, in fulfilling their pledge to be zealous
advocates, must often make arguments which are unlikely to
succeed.  That does not therefore mean that they are acting
dishonorably.  To impugn such behavior--for that reason alone--
would place attorneys in a Catch 22.

Thus, in light of the preceding analysis, the Court denies

---

[1]      The Court notes that the plaintiff, notwithstanding
this Opinion, may always petition the Clerk of the Court for
costs resulting from the defendants' failure to "avoid
unnecessary costs of serving the summons."  Fed. R. Civ. Pro.
4(d)(2).

-5-

the plaintiff's plea for attorneys' fees and costs.[2]

## B.    The Defendants' Motion for a Protective Order

A court may enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. Pro. 26(c) .  The party seeking a protective order must show "good cause" for the order.  Fed. R. Civ. Pro. 26(c); *see also Smith v. Bic Corp,* 869 F.2d 194, 199 (3d Cir. 1989).  Courts often evaluate good cause by balancing a producing party's burden of production and privacy interests with the other party's right to obtain relevant information.  *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34-36 (1984); *Coleman v. American Red Cross*, 979 F.2d 1135, 1139 (6th Cir. 1992).  In permitting and crafting such an order, the court enjoys broad discretion.  *See Seattle Times*, 467 U.S. at 36.

In the case at hand, the Court does find a limited protective order to be necessary.  However, contrary to the defendants' argument, an expansive protection from discovery is

_____

[2]    This matter is distinguishable from the fees decision made by Judge Hogan in a separate case involving the same parties.  *See Ned Chartering and Trading, Inc. v. Republic of Pakistan, el al.,* Civ. A. No. 95-991. In that case, Judge Hogan, adopting the recommendation of Magistrate Judge Robinson, found that the defendants' repeated failure to oppose the plaintiff's motions amounted to bad faith.  See Order of Feb. 2, 2001, (accepting May 17, 2000 recommendation of Magistrate Judge Robinson).  In this case, the defendants have not repeatedly failed to appear.  To the contrary, the defendants have manifested a meaningful adversary presence by responding and replying to all major motions.

not merited.  The Court finds that the plaintiff may depose an
official from the Bank of Pakistan designated by the defendants
pursuant to Rule 30(b)(6).  Further, the plaintiff may seek
additional information through interrogatories, but may not issue
more than 5 interrogatories without further permission from the
Court.  The Court will also entertain motions for additional
depositions.  Finally, the plaintiff must assiduously respect the
defendants' assertions of confidentiality based on military and
diplomatic grounds.  If the plaintiff has good reason to doubt
the veracity of these assertions, the Court will hear argument
and resolve the issue.

     In making this conclusion, the court necessarily rejects
several of the defendants' arguments.  First, the Court rejects
the defendants' plea for "adequate time to post a bond."  *See*
Brief for Defendants, Mar. 7, 2001, at 3.    Six months have
elapsed since the entry of judgment, and the defendants have
still not posted a bond.  Six months is adequate time, and even
if it was not, the defendants fail to explain how limited
discovery will inhibit this process.

     Second, the Court disagrees with the defendants' assertion
that the plaintiff's proposed discovery is "unnecessary."  *Id.* at
4.  The plaintiff is attempting to collect a quarter-million
dollars it has lost.  It is quite reasonable for the plaintiff to
thus take some discovery as to the defendants' assets.  Although
the defendants' proffer of an affidavit by a bank official is
heartening, it is by no means as expansive and informative as a

deposition could be.   Further, a deposition will not put the defendant's diplomatic interests at risk, as the Court's protective order commands the plaintiff to accept the defendants' good faith assertions of privilege.

Finally, the defendants' argument that the Pakistani Ministry of Food and Agriculture is not a separate legal entity is contrary to law.   Many Courts, including the instant one, have held that such a governmental organ is an "agency or instrumentality" under the Foreign Sovereign Immunities Act. *See, e.g., Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 14, (D.D.C. 1998) (holding that the Iranian Ministry of Information and Security is an "agency or instrumentality" of the Islamic Republic of Iran); *Anderson v. The Islamic Republic of Iran*, 70 F. Supp. 2d 90 (D.D.C. 2000) (same).

### C.   The Plaintiff's Motion for Leave to File a Sur-Reply

Although there is little formal law on sur-replies, courts have granted leave to file such papers when a party has raised new *evidence* for the first time in a reply brief.   *See Alexander v. FBI,* 186 F.R.D. 21, 52 (D.D.C. 1998) (Lamberth, J.).   In the case at hand, the defendants adduced new evidence to the debate by attaching the affidavit of Amjad Ali Sheikh to their March 7, 2001 reply.   Given this, as well as the liberal allowances permitted to the defendants in previous filing deadlines, the Court finds the motion for leave to file a sur-reply to be

-8-

merited.

### III.  Conclusion

In conclusion, the Court DENIES the plaintiff's prayer for attorneys' fees and costs, GRANTS in part and DENIES in part the defendants' motion for a protective order, and GRANTS the plaintiff's motion for leave to file a sur-reply.  A separate order implementing this decision shall issue this date.

Date: _____6 -18- 01_____        _____
                                 ROYCE C. LAMBERTH
                                 UNITED STATES DISTRICT JUDGE